# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
(Lynchburg Division)

| | |
|---|---|
| JEREMY CORBIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> SONYA MOVASSAGHI, DMD, ) <br> in her individual and official ) <br> capacities; ) <br> ) <br> KAREN WOODSON, RNC, ) <br> Health Authority at ) <br> Dillwyn Correctional Center, in her ) <br> individual and official capacities; ) <br> ) <br> GOUTOM BHOWMICK, DDS, ) <br> in his individual and official ) <br> capacities; ) <br> ) <br> THOMAS, RN, ) <br> Nurse at Dillwyn Correctional ) <br> Center, in her individual capacity; and ) <br> ) <br> MITCHELL, RN ) <br> Nurse at Dillwyn Correctional ) <br> Center, in her individual capacity; ) <br> ) <br> Defendants. ) | CIVIL ACTION No. **6:22CV00012** <br><br> **COMPLAINT** <br><br> CLERKS OFFICE U.S. DIST. COURT <br> AT LYNCHBURG, VA <br> FILED <br> 3/15/2022 <br> JULIA C. DUDLEY, CLERK <br> BY: s/ CARMEN AMOS <br> DEPUTY CLERK |

## PRELIMINARY STATEMENT

1.      As an inmate at Dillwyn Correction Center ("Dillwyn") in early 2020, Jeremy Corbin was experiencing increasingly severe pain in his left rear #18 molar. Mr. Corbin filed a series of grievances and advised administrative and medical staff that the painful tooth was attached to a metal fixation plate that had been previously placed in his jaw at University of Virginia Hospital following an injury he sustained when kicked in the face by a horse. Following the fourth request for care, an emergency grievance Mr. Corbin filed on March 24, 2020, he was seen by Dillwyn staff dentist, Sonya Movassaghi, DDS. Dr. Movassaghi was made aware of the fixation plate and conducted an X-ray to confirm that the tooth in question was attached to the plate with screws. Nevertheless, Dr. Movassaghi attempted for over three hours to pull, saw, and cut the tooth from Mr. Corbin's jaw, causing him extreme pain. When Dr. Movassaghi finally conceded she was unable to remove the tooth, he was sent back to his cell. Mr. Corbin then proceeded to file numerous grievances complaining of pain, suspected infection, inability to eat or sleep, and drooling. Nevertheless, he would have to wait over two more months until finally being sent out to an oral surgeon, Dr. Stephen Brown.

2.      As an oral surgeon, Dr. Brown examined Mr. Corbin's tooth and immediately recognized that the tooth could not be removed without surgery to

remove the fixation plate to which it was attached, a procedure that could not be performed outside a surgery facility. Dr. Brown referred Mr. Corbin for surgery at Virginia Commonwealth University's Medical College of Virginia ("MCV") or at UVA Hospital. After two more weeks of pain and suffering, during which time Mr. Corbin continued to be denied effective medical care, Dillwyn brought Mr. Corbin to MCV, where surgery was performed, and the tooth and plate were finally removed. Following surgery, Mr. Corbin returned to Dillwyn and continued to experience significant pain. He received only minimal follow-up care after filing repeated requests and grievances for the hospital-ordered aftercare. Throughout the entire ordeal, Mr. Corbin repeatedly sought administratively available remedies for the denial of care.

3.   Mr. Corbin now brings this action for deprivation of his civil rights, pursuant to 42 U.S.C. § 1983, under color of the rights, privileges and immunities secured to Mr. Corbin by provisions of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff brings claims for the deliberate indifference to serious medical needs under 42 U.S.C. Section 1983 as well as state law claims for medical malpractice and gross negligence. Plaintiff seeks compensatory and punitive damages as well as attorney's fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the constitutional claims in this action pursuant to 28 U.S.C. §§1331 and 1343, and supplemental jurisdiction over the state law claims under 28 U.S.C § 1367.

5. Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the acts and omissions giving rise to the unconstitutional practices alleged herein arose in the Western District of Virginia.

## PARTIES

6. Plaintiff Jeremy Corbin (hereinafter "Mr. Corbin") is a forty-two-year-old citizen of Virginia and is currently incarcerated in Dillwyn Correctional Center in Dillwyn, Virginia.

7. Dr. Sonya Movassaghi, DMD (hereinafter "Defendant Movassaghi") was the dentist at Dillwyn during the time of the events described in this lawsuit, up to on or about April, 2020. As such, she was responsible for the diagnosis, care and treatment of Jeremy Corbin's dental and medical needs short of performing surgery. Defendant Movassaghi was and is a dentist and not an oral surgeon and was responsible for implementing VADOC dentistry policy during her term at Dillwyn. Defendant Movassaghi is sued in her individual and official capacities.

8. Goutom Bhowmick, DDS is the dentist at Dillwyn and has been responsible for the diagnosis, care and treatment of Jeremy Corbin's dental and

medical needs since Dr. Movassaghi's departure from Dillwyn in the weeks following the botched extraction. Dr. Bhowmick is also responsible for implementing VADOC policy regarding dentistry at Dillwyn. He is sued in his individual and official capacities.

9. Karen Woodson is the Health Authority at Dillwyn and is responsible for directing the medical care of Jeremy Corbin, including pain and infection management, and recommending treatment outside of Dillwyn, as well as implementing VADOC medical policies. She is sued in her individual and official capacities.

10. Nurse Thomas is a registered nurse at Dillwyn and is responsible for providing Jeremy Corbin's medical care, including pain and infection management. Nurse Thomas is sued in her individual capacity.

11. Nurse Mitchell is a registered nurse at Dillwyn and is responsible for providing Jeremy Corbin's medical care, including pain and infection management. Nurse Mitchell is sued in her individual capacity.

## FACTUAL STATEMENT

12. Prior to his incarceration at Dillwyn, Plaintiff had suffered a broken jaw when kicked in the face by a horse. Plaintiff's injury required surgical placement of a metal fixation plate in his lower left jaw to which his lower #18 molar was affixed with surgical screws.

13. In early 2020, while incarcerated at Dillwyn, Plaintiff experienced severe dental pain that necessitated treatment. Such pain constituted a serious medical need.

14. On March 20, 2020, Dana Ratliffe-Walker, Warden of Dillwyn, issued a memorandum stating that, to prevent the spread of COVID-19, the VADOC Chief Dentist had recommended that the agency comply with the recommendations of the American Dental Association and that the Dillwyn dental department would therefore postpone all elective procedures for "at least three weeks." The memorandum added that services would still be provided for dental emergencies, which are defined as "conditions that may have an immediate effect on the health of the offender."[1]

15. In January through March 2020, Mr. Corbin filled out at least three offender request forms, requesting that he see a dentist due to tooth pain. On at least one of those request forms, he further indicated that he had a metal fixation plate in his jaw at the site of the pain.

16. On March 24, 2020, Mr. Corbin was seen by a dentist at Dillwyn, Dr. Sonya Movassaghi, for a severe toothache in tooth #18, a molar in the lower left side of Mr. Corbin's jaw.

---

[1] March 20, 2020 Memorandum, attached as **Exhibit 1**.

17. Mr. Corbin advised Dr. Movassaghi that he had a mandible fixation plate in his lower left jaw into which tooth #18 was screwed.

18. Dr. Movassaghi had ordered and obtained an X-Ray of Mr. Corbin's mouth and was therefore aware that Mr. Corbin had a metal fixation plate in his jaw from a prior mandible fracture, to which the tooth in question was attached.

19. Nevertheless, Dr. Movassaghi, who was not qualified as an oral surgeon and did not work in a surgical facility, proceeded with the attempted extraction, knowing that such a course of treatment was likely to cause Mr. Corbin harm. For several gory hours, she tried, without success, to remove the tooth that was connected to the fixation plate, causing Mr. Corbin great pain and anguish.

20. Dr. Movassaghi ultimately stopped the unsuccessful procedure and informed Mr. Corbin that he would need to be seen by an oral surgeon.

21. Inexplicably, Mr. Corbin was not sent to an oral surgeon for over two excruciating months, from March 24 until June 9, 2020, during which time Mr. Corbin remained in significant pain that interrupted his ability to sleep and left him hardly able to eat even soft foods.

22. From March 25, 2020, the day after the botched extraction, though June 9, 2020, the day he was finally seen by an oral surgeon, Mr. Corbin filed no fewer than eight emergency grievances and informal complaints complaining of pain in his tooth and jaw, difficulty sleeping and eating, and drooling.

23.     On March 27, 2020, Dr. Movassaghi, replying to one of Mr. Corbin's follow-up emergency grievances, wrote "[p]er order of the Governor, dental procedures which do not negatively affect the patient's health outcomes or lead to disability or death are prohibited. Please use prescriptions provided and techniques discussed to manage pain." [2]

24.     Goutom Bhowmick, the Dillwyn dentist who replaced Dr. Movassaghi after her departure, filed staff responses to similar emergency grievances. On both April 28 and May 4, 2020, Dr. Bhowmick responded:

> Per order from VADOC guidelines for dental procedures which do not negatively affect health outcomes or lead to disability/death are prohibited, please use prescription provided before to manage pain and use oral hygiene techniques taught to you. [3]

Incomprehensibly, both Drs. Bhowmick and Movassaghi, even after X-rays of Mr. Corbin's jaw showing the metal fixation plate and Dr. Movassaghi's brutal failed extraction of the tooth, wrongfully determined that Mr. Corbin did not require medical care to avoid "negative health outcomes."

25.     Rather than provide necessary medical care, Defendants Bhowmick and Woodson simply prescribed Mr. Corbin an antiseptic mouthwash on April 24, 2020. However, at numerous instances that spring, the mouthwash was not made

---

[2] March 27, 2020 Emergency Grievance, attached as **Exhibit 2**.

[3] April 28, 2020 Emergency Grievance attached as **Exhibit 3** and May 4, 2020 Emergency Grievance attached as **Exhibit 4**.

8

available to him by defendants Karen Woodson, Nurse Thomas, and Nurse Mitchell. Further, Mr. Corbin was provided minimal pain medication during this time and no antibiotics despite evidence of infection at the site of the decayed tooth.

26. Finally, on June 9, 2020, Mr. Corbin was seen by an oral surgeon in private practice, Dr. Stephen C. Brown, who advised Mr. Corbin that he needed surgery to complete the tooth extraction. Dr. Brown noted that Mr. Corbin had a mandible fixation plate to which the decayed tooth #18 was attached, and that "simultaneous removal of the mandible fixation plate" would be required "in an [operating room] setting." Because operating room surgery was required, Dr. Brown indicated he could not perform the extraction in his office and referred Mr. Corbin to a hospital. In his June 9, 2020 referral notes, Dr. Brown indicated

> patient has a fixation plate attached to tooth!! Removal of tooth will require removal of plate. Will require hospital admission (MCV? UVA?) for outpatient/same day surgery to remove tooth/fixation plate. Please see attached [X-ray image].

Dr. Brown performed a panoramic X-ray in his office and attached the image to Mr. Corbin's patient file. The X-ray clearly shows the #18 tooth affixed to the mandible fixation plate with screws.[4]

27. On June 9, 2020, following his appointment with Dr. Brown, Mr. Corbin returned to Dillwyn where he continued to suffer immense pain. In the two

---

[4] Dr. Brown's Patient Notes, June 9, 2020, attached as **Exhibit 5**

weeks following his appointment with Dr. Brown, Mr. Corbin submitted at least five emergency grievances detailing the insufficiency of his pain and infection management. Despite knowledge of Mr. Corbin's pain and suffering, Defendants Bhowmick, Woodson, Thomas, and Mitchell refused Mr. Corbin adequate pain and antibiotic treatment as they forced him to wait an additional two weeks for the dental surgery ordered by Dr. Brown.

28. Finally, on or about June 25, 2000, Mr. Corbin had surgery at VCU-MCV Hospital in Richmond ("MCV"), Virginia to extract the tooth in question. Dr. Strauss, the attending physician at MCV, indicated in patient care notes that

> an oral surgeon at the facility [Dillwyn] attempted to remove [tooth] #18 but was unsuccessful as the tooth is 'screwed in' by a plate [patient] has from a previous jaw fracture. Patient states for the past few weeks he has been having lots of pain in his lower left jaw.

29. Following his surgery on June 25, 2020, Mr. Corbin continued to file emergency grievances complaining of improper changes made to his post-surgical care plan, inadequate pain treatment, and complete denial of pain management.

30. From at least January 9, 2020, until his recovery from the June 25, 2020 surgery, Mr. Corbin experienced unnecessary, severe pain caused by Defendants Movasagghi, Woodson, Thomas, Mitchell, and Bhowmick's denial of medical care. During that period, Mr. Corbin was in acute and avoidable pain and was subjected to an excruciating and ineffective attempted extraction by Defendant Movassaghi, an unqualified and ill-equipped dentist masquerading as an oral surgeon, in a prison

dental office without proper medical equipment, supplies, or support. Following the botched extraction, Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick were deliberately indifferent to Mr. Corbin's medical needs, which left him disabled until a qualified surgeon was finally permitted to intervene on June 25, 2020. Mr. Corbin has suffered pain, injury, and mental anguish throughout the ordeal.

## CAUSES OF ACTION

### COUNT I. 42 U.S.C. §1983 Claim Against all Defendants for Deliberate Indifference to Medical Needs

31. The allegations of the foregoing paragraphs are incorporated herein by reference.

32. As described above, Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick failed to ensure that Mr. Corbin received prompt and adequate medical care relating to his dental issues.

33. The actions of Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick exhibited deliberate indifference to Mr. Corbin's serious medical needs, were performed under color of state law, and violated Mr. Corbin's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

34. As a direct and proximate result of the actions of Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick in failing to ensure that

Mr. Corbin received prompt and adequate medical care, Mr. Corbin was subjected to increased pain, serious physical injury, and mental anguish.

35. The conduct of Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick was willful and exhibited a flagrant disregard for Mr. Corbin's federally secured rights. Accordingly, these Defendants are liable to Mr. Corbin under 42 U.S.C. Section 1983.

36. By failing to provide Mr. Corbin with constitutionally adequate medical care, by failing to timely follow up on his treatment, and by refusing to comply with his post-surgical treatment plan, the Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick knowingly disregarded an excessive risk to Mr. Corbin's health and safety and knowingly subjected him to pain, physical and mental injury, thereby violating Mr. Corbin's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

### COUNT II. Medical Malpractice (against all Defendants)

37. The allegations of the foregoing paragraphs are incorporated herein by reference.

38. Virginia law imposes a duty of care on medical staff to protect incarcerated persons' health and safety.

39. At all times relevant herein, Defendants Movassaghi, Bhowmick, Thomas, Mitchell, and Woodson had an affirmative duty to provide Mr. Corbin with

appropriate medical care and treatment in a manner consistent with Virginia law and the prevailing standards of care.

40. The acts and omissions of Movassaghi and Bhowmick herein constitute violations of the standards of care with respect to Mr. Corbin by persons licensed by the Commonwealth of Virginia to provide dental care.

41. The acts and omissions of Woodson, Mitchell, and Thomas constitute violations of the standards of care with respect to Mr. Corbin by persons licensed in the Commonwealth of Virginia to provide nursing care.

42. Defendant Movassaghi breached her duty of care by botching a tooth extraction on March 24, 2020.

43. Defendants Movassaghi, Bhowmick, Thomas, Mitchell, and Woodson breached their duties of care by not adequately treating Mr. Corbin's dental pain and by inappropriately delaying a follow-up appointment with an oral surgeon, despite weeks of emergency medical requests for treatment.

44. The combined failures of Defendants Movassaghi, Bhowmick, Thomas, Mitchell, and Woodson to meet the standards of care were the proximate cause of Mr. Corbin's injuries.

45. The actions or omissions described herein constitute the tort of medical malpractice under the laws of the Commonwealth of Virginia.

## **COUNT III. Gross Negligence (against all Defendants)**

46. The allegations of the foregoing paragraphs are incorporated herein by reference.

47. Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick had duties to exercise reasonable care with regard to Mr. Corbin.

48. Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick breached their duties to exercise reasonable care with regard to Mr. Corbin.

49. Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick were deliberately indifferent to Mr. Corbin's medical needs and demonstrated utter disregard of prudence amounting to complete neglect of his safety and well-being.

50. Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick were aware of their conduct and, from their knowledge of existing circumstances and conditions, were aware that their conduct would result in injury to Mr. Corbin.

51. As a direct and proximate result of the gross negligence of Defendants Movassaghi, Woodson, Thomas, Mitchell, and Bhowmick, Mr. Corbin suffered injuries, great physical pain, severe emotional distress, and mental anguish.

## DAMAGES

52. Plaintiff has suffered the following injuries for which he seeks full compensation under the law:

   a. Personal injuries resulting from botched tooth extraction;

   b. Recurring pain and suffering;

   c. Mental and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

   a. DECLARE JUDGMENT that Defendants' conduct violates the Eighth and Fourteenth Amendments to the United States Constitution;

   b. ENTER JUDGMENT holding the Defendants liable for damages arising from Defendants' constitutional and statutory violations, including for pain and suffering, in an amount to be determined at trial;

   c. AWARD Plaintiff his costs and reasonable attorneys' fees;

   d. AWARD Plaintiff punitive damages appropriate to the proof at trial; and

   e. GRANT such other and further relief as is just.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury for all claims presented.

Dated: March 14, 2022                               Respectfully submitted,

/s/ *Daniel H. Goldman*
Daniel H. Goldman, #82144
The Law Office of
Daniel Goldman, PLLC
114 N. Alfred Street
Alexandria, Virginia 22314
Tel:   (202) 677-5709
Fax:   (833) 523-2310
dan@dangoldmanlaw.com

/s/ *Evan M. Goldberg*
Evan M. Goldberg
The Law Office of Evan M. Goldberg
5423 32nd St NW
Washington, DC 20015
Tel: (504) 717-5005
egoldberg.esq@gmail.com
*Pro Hac Vice Admission pending*

## CERTIFICATE OF SERVICE

I, Daniel H. Goldman, do hereby certify that on March 15, 2022, the foregoing document was filed with the Clerk of Court using the CM/ECF system.

/s/ *Daniel H. Goldman*_____
Attorney for Plaintiff