# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | | |
|---|---|---|
| **JEREMY CORBIN** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:22-CV-00012-NKM |
| | ) | |
| **SONYA MOVASSAGHI, DMD, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

### DEFENDANT SONYA MOVASSAGHI, DMD'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendant Sonya Movassaghi, DMD ("Dr. Movassaghi"), by counsel, submits this brief in support of her Motion to Dismiss Pursuant to Rule 12(b)(6). For the reasons set forth below, Jeremy Corbin's ("Plaintiff") Complaint fails to set forth a claim against Dr. Movassaghi for which relief can be granted, and she must be dismissed. Even if Plaintiff does assert a plausible claim against Dr. Movassaghi, defendant is entitled to immunity.

### STATEMENT OF THE CASE

Despite the unprecedented restrictions of a COVID-19 pandemic in early 2020, Plaintiff alleges that Sonya Movassaghi, DMD, was deliberately indifferent in the treatment of alleged dental issues he experienced as an inmate at Dillwyn Correctional Center, in violation of 42 U.S.C. § 1983. Despite choosing not to obtain a pre-service expert certification, Plaintiff further alleges that Dr. Movassaghi negligently provided him dental care in violation of the law of the Commonwealth of Virginia.



Even considering the allegations in the Complaint in the light most favorable to the plaintiff,[1] Dr. Movassaghi's course of actions and clinical determinations do not rise to the level of deliberate indifference. It is undisputed that she provided Plaintiff dental care although he disagrees with the care he received. He received the care he desired (extraction of the tooth) and cannot claim a permanent loss or lifelong handicap. As such, the § 1983 claim against Dr. Movassaghi should be dismissed.

Plaintiff further alleges that Dr. Movassaghi's course of treatment and clinical determinations constituted medical malpractice. This claim should be dismissed as a matter of law because: (1) the Plaintiff failed to obtain a preservice expert witness certification in accordance with Virginia law and/or because (2) Dr. Movassaghi is entitled to immunity from any damages pursuant to Governor Northam's COVID-19 Orders.

Plaintiff further claims Dr. Movassaghi provided grossly negligent care but these claims lack merit as a matter of law and should be dismissed for the reasons below.

## STATEMENT OF FACTS

Plaintiff's Complaint alleges that in early 2020, while incarcerated at Dillwyn Correctional Center (DCC), Plaintiff experienced pain in a tooth on his lower left jaw. ECF No. 1, ¶ 13. It is undisputed that this occurred during the COVID-19 pandemic. The pandemic dramatically impacted healthcare providers and their ability to provide medical care. But, despite mentioning it existed, Plaintiff asks the Court to ignore the impact COVID had on the availability of healthcare resources.

On March 20, 2020, Dana Ratliffe-Walker, the Warden at DCC, issued a memorandum postponing all dental elective procedures for "at least three weeks." Id. at ¶

---

[1] Dr. Movassaghi in no way adopts the factual or legal positions recited in the Complaint.

14. Plaintiff alleges that he filled out multiple offender request forms due to toothaches and requested dental treatment over the course of January through March 2020. Id. at ¶ 15. On March 24, 2020, Dr. Movassaghi saw Plaintiff at DCC to evaluate a molar in the lower left side of his jaw. Id. at ¶ 16.

Plaintiff alleges that he had a "metal fixation plate in his lower jaw" to which the tooth complained of was attached with screws. Id. at ¶ 12. Plaintiff alleges that Dr. Movassaghi was aware of the "metal fixation plate" in his jaw, id. at ¶¶ 17–18, and Dr. Movassaghi attempted to extract the tooth attached to the "metal fixation plate," id. at ¶ 19. According to Plaintiff, Dr. Movassaghi was unable to extract the tooth and then provided follow-up care until she left DCC in April 2020. While he contends the procedure was lengthy, there are no allegations he did not receive pain control during the procedure or that the length of the procedure harmed him. He acknowledges Dr. Movassaghi is a trained dentist. Id. at ¶¶ 7, 16. This was the final time she provided care to Plaintiff, and other healthcare professionals assumed his care and treatment following her departure. Id., ¶¶ 7-11.

Plaintiff claims he had to wait from March 24, 2020 until June 9, 2020 before seeing an oral surgeon. Id. at ¶¶ 19-22[2]. He claims that he experienced tooth and jaw pain, difficultly sleeping, difficulty eating, and drooling. Id. at ¶ 22. It is undisputed that Dr. Movassaghi provided prescriptions and advice on how to manage the pain. Id. at ¶ 23. There is no allegation he was denied dental care from this defendant. Rather, Plaintiff merely disagrees with the care Dr. Movassaghi provided.

---

[2] However, this Defendant did not provide dental care to the Plaintiff for this entire period.

3

182.0098\MEK
4871-2136-0927 .v2

Following the March 2020 treatment, Plaintiff's emergency grievance requests for treatment were denied—in accordance with the health guidelines put in place in response to the COVID-19 pandemic. Id. at ¶¶ 23-24. On June 25, 2020, well after this defendant's care had ended, Plaintiff received his desired surgery at VCU-MCV Hospital in Richmond, Virginia. Id. ¶ 28.

## ARGUMENT & AUTHORITIES

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255-56 (4th Cir. 2009); Van Buren v. Va. Highlands Orthopaedic Spine, 728 F. Supp. 2d 791, 793 (W.D. Va. 2010). To meet the plausibility standard, there must be factual content in a complaint which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Thus, pleadings that offer mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

4

sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)).

**I.  Plaintiff's Complaint fails to set forth a plausible factual basis to conclude that Dr. Movassaghi was deliberately indifferent to a serious medical need or that her actions caused Plaintiff a serious injury.**

The Eighth Amendment to the United State Constitution prohibits the infliction of cruel and unusual punishment; but it "'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 339 (1981)). Yet, "'[a] prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment . . . ." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

Properly stated Eighth Amendment deliberate indifference claims contain both an objective and subjective component. Drakeford v. Mullins, 678 F. App'x 185, 186 (4th Cir. 2017) (per curiam). The objective component consists of an allegation that the prisoner (1) suffered "a serious or significant physical or emotional injury . . . or (2) demonstrated a substantial risk of such serious harm . . . ." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). In order to be serious enough to give rise to a constitutional claim, the medical need generally must risk loss of life, permanent disability, or a condition for which lack of treatment perpetuates severe pain. Acevedo v. Warner, No. 7:03cv526, 2005 U.S. Dist. LEXIS 32332, at *29–30 (W.D. Va. Mar. 29, 2005) (citations omitted). In other words, the medical condition must be "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Drakeford, 678 F. App'x at 186 (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

5

To meet the subjective component, the defendant must have "a sufficiently culpable state of mind." De'Lonta, 330 F.3d at 634 (citations omitted). The defendant must (1) "actually know of and disregard an objectively serious condition, medical need, or risk of harm," id.; and (2) actually know of "'the excessive risk posed by the official's action or inaction.'" Scinto v. Stansberry, 841 F.3d 219, 226 (4th Cir. 2016) (quoting Jackson, 775 F.3d at 178).

Also, the alleged deprivation must be "extreme," and the defendant's conduct must entail "more than mere negligence." Id. (internal quotations omitted). For purposes of a health care provider, the medical treatment must have been so "'grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990)). Neither malpractice nor misdiagnosis alone give rise to a violation of the Eighth Amendment. Miltier, 896 F.2d at 851. And mere disagreements "over the inmate's proper medical care" are generally not actionable. Scinto, 841 F.3d at 225-26 (quotations omitted). Indeed, "disagreements between a patient and his medical care givers" do not equal deliberate indifference. Thompson v. Clarke, No. 7:17cv10, 2018 WL 1547360, 2018 U.S. Dist. LEXIS 53193, at *15 (W.D. Va. Mar. 29, 2018) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)).

That a prisoner did not receive the treatment desired does not constitute deliberate indifference, nor does disagreement between two medical professionals. Id., see also Jackson, 775 F.3d at 178 (stating that a prison doctor's treatment decisions could be "gravely" mistaken and disagree with a former diagnosis and prescribed treatment plan by an outside specialist without running afoul of the Eighth Amendment). Instead, a plaintiff


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

6

must show that the doctor failed to provide care the doctor felt to be necessary. Id. ("... a doctor's failure to provide care that he himself deems necessary to treat an inmate's serious medical condition may constitute deliberate indifference."); see also Wood v. Chadwick, No. 5:10-CT-3039-D, 2012 U.S. Dist. LEXIS 59070, at *19 (E.D.N.C. Apr. 26, 2012). A prison physician is not constitutionally required to follow a specialist's recommendations. See Starling v. United States, 664 F. Supp. 2d 558, 570 (D.S.C. 2009). Nor is an inmate entitled to choose his course of treatment. See De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). The Constitution requires only that prisoners receive adequate medical care. See Goodman v. Johnson, 524 F. App'x 887, 889 (4th Cir. 2013).

Plaintiff fails to state a claim for deliberate indifference because it is undisputed that Dr. Movassaghi provided him medical care, even if Plaintiff now disagrees with the course of treatment. It is clear from Plaintiff's Complaint that Dr. Movassaghi exercised her medical judgment to treat the Plaintiff's claimed dental issues. Dr. Movassaghi, a trained dentist, examined the Plaintiff's tooth and attempted an extraction of that tooth. She took and interpreted an x-ray. When Dr. Movassaghi determined that the tooth would require an oral surgery to extract, she prescribed Plaintiff an antiseptic mouthwash, Tylenol was provided, and management techniques were provided to the Plaintiff to manage pain and mitigate infection. See ECF No. 1, ¶ 25; see also ECF No. 1-2, March 27, 2020 Emergency Grievance Form (Plaintiff complaining that the "tyneol" [sic] he was provided is not sufficient to manage his pain).

Dr. Movassaghi further exercised her medical judgment to determine that Plaintiff's alleged tooth pain did "not negatively affect the patient's health outcomes or lead to disability or death." Dr. Movassaghi used this determination to evaluate the need for



Plaintiff's referral to an oral surgeon in view of the COVID-19 guidelines put in place by Governor Northam and professional associations. This reasoned determination does not amount to deliberate indifference simply because Plaintiff wanted a different course of care.

For example, in Keating v. Meade, No. 1:20cv550, 2021 U.S. Dist. LEXIS 6553 (E.D. Va. Jan. 12, 2021), an inmate in the Rappahannock Regional Jail was found to have severe decay and an abscess on his Number 18 molar requiring extraction via oral surgery. The initial oral exam and diagnosis in Keating occurred in August 2019. Id. at *2. Scheduling delays related to the COVID-19 pandemic meant that it took from March 27, 2020 to June 19, 2020 to surgically extract the inmate's molar. Id. at *4-*5. Meanwhile, the plaintiff in Keating was prescribed pain medication and an antibiotic to manage pain and mitigate infection symptoms. Id. at *5. In granting summary judgment for the defendant, the Keating Court stated:

> It is regrettable that the pandemic delayed Keating's referral to the oral surgeon by approximately three months, but it is simply another scheduling issue over which no one had control.
>
> Even though none of the delay is attributable to defendant Meade, a delay in medical care is only a constitutional violation where the prisoner can show that the delay resulted in "substantial harm," which may be satisfied by "lifelong handicap, permanent loss, or considerable pain."

Id., at *14-*15 (citing Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)).

As a matter of law, Dr. Movassaghi's actions set forth in the Complaint did not constitute deliberate indifference towards Jeremy Corbin. Plaintiff's Complaint fails to state a cause of action as to Dr. Sonya Movassaghi because Plaintiff received adequate medical care in that his tooth was extracted and that after the first attempt he was provided with antiseptic mouthwash, pain medication, and training to mitigate his symptoms.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

8

By Plaintiff's own allegations, Dr. Movassaghi did not knowingly disregard a serious medical condition. Rather, the postponing of the oral surgery in response to determining that Plaintiff's condition did not seriously affect Plaintiff's health outcome or would lead to disability or death was an exercise of medical judgment that complied with the Governor's order in response to the COVID-19 pandemic. See ECF No. 1, ¶ 23; see also Coward v. Clarke, No. 7:20cv702, 2022 U.S. Dist. LEXIS 60004, at *19 (W.D. Va. Mar. 31, 2022) (stating that doctor was not deliberately indifferent where treatment was delayed, as doctor exercised medical judgment to determine that the risk of COVID exposure was a greater threat to the inmate patient's heath than the inmate's medical grievance).

Finally, Plaintiff had the surgery he desired and cannot claim an injury significant enough to rise to the level of a violation of his constitutional rights. Like the analysis in Keating, there is no claimed lifelong handicap or permanent loss. Any pain he experienced from March 24, 2020 until the end of Dr. Movassaghi' s care in April 2020 was addressed by providing him pain medication. Like many people, COVID-19 impacted his dental care, but he continued to receive treatment until his desired surgery could be performed a few months later.

## II. Plaintiff's medical negligence claims must be dismissed under Virginia law and/or Dr. Movassaghi is entitled to immunity.

In Count II of his Complaint, Plaintiff asserts a state law medical malpractice claim against Dr. Movassaghi. ECF No. 1, ¶¶ 37-45. Plaintiff's medical malpractice claim against Dr. Movassaghi should be dismissed on either, or both, of two grounds: (1) Plaintiff's failure to certify an expert witness at the time of service in accordance with Virginia law and/or (2) Dr. Movassaghi's immunity to liability in accordance with COVID-19 being declared a disaster.



a. **Plaintiff needed to certify this case before requesting service on Dr. Movassaghi and his failure to do so requires dismissal of these claims.**

Because Plaintiff asserts a state law medical malpractice claim, Va. Code Ann. § 8.01-20.1 obligated Plaintiff to certify that he has obtained a written signed opinion that the defendant "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." from an expert witness. Va. Code. Ann. § 8.01-20.1 requires this certification "*at the time the plaintiff requests service of process upon a defendant, or requests a defendant to accept service of process*[.]" (emphasis added). Plaintiff's counsel responded to a written request for confirmation that this case was certified prior to service by contending no certification was required following the decision in Pledger v. Lynch, 5 F.4th 511 (4th Cir. 2021). See Exhibit 1. This legal position is mistaken.

b. **Pledger does not apply and Virginia's pre-service expert certification must have been complied with for the medical negligence claims in this case.**

On July 21, 2021, the Fourth Circuit issued an opinion holding that a plaintiff asserting a claim under the Federal Tort Claims Act ("FTCA") was not required to comply with the certificate of merit requirement of the West Virginia Medical Professional Liability Act ("WVMPLA") as the requirement conflicted with Federal Rules 4, 8, 9, 11, and 12. Pledger, 5 F.4th at 523–24. In its rationale, the Fourth Circuit relied heavily on Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010) and its proposition that where a direct conflict exists between a federal rule and a state law, then the federal rule supersedes the state law and that no Erie analysis is necessary. Id., 518–523.



182.0098\MEK
4871-2136-0927 .v2

The WVMPLA, which was the underlying state law at issue in Pledger, provided that a claimant must serve, at least 30 days **prior to the filing** of a medical professional liability action against a health care provider, a notice of claim on each health care provider to be joined to the litigation. W. Va. Code Ann. ¶ 55-7B-6.  The WVMPLA states that this notice of claim shall include a statement of the theories of liability upon which the cause of action is based and a list of all health care providers and facilities to whom notices of claim are being sent, together with the screening certificate of merit. Id.  In contrast, Va. Code Ann. § 8.01-20.1 requires that a plaintiff claiming medical malpractice must certify—and affirm within ten days upon a defendant's written request—that the plaintiff has obtained an expert opinion **prior to requesting defendant to accept or waive service**.

Pledger's analysis of the WVMPLA's certificate of merit requirement as compared to the Federal Rules cannot be applied to Virginia's expert certification requirement because they differ many respects including: (1) the type of certification that is made, (2) the timing of the certification, and (3) what triggers the certification.

The Virginia requirement governs implied certifications made by the plaintiff that a qualified expert issued a favorable opinion for the plaintiff in writing based on a reasonable understanding of the facts.  The West Virginia requirement governs express certifications that must be specifically made to the defendants in writing and sent by mail. Compare Va. Code § 8.01-20.1 with W. Va. Code § 55-7B-6.

The statutes also differ as to when the certifications are made. In Virginia, the certifications are made upon requesting service or waiver of service on the defendant, which is *after* a complaint has already been filed. Va. Code § 8.01-20.1. In West Virginia, by

11

182.0098\MEK
4871-2136-0927 .v2

contrast, the certificate of merit requirement must be mailed to the defendant thirty days *before* a complaint is filed. W. Va. Code § 55-7B-6

The statutes differ as to what triggers the expert certifications. The Virginia implied certification is triggered by the plaintiff requesting service or waiver of service on a defendant. Va. Code § 8.01-20.1. The West Virginia statute is a pre-lawsuit requirement triggered by the anticipated future filing of a complaint. W. Va. Code § 55-7B-6.

Because the West Virginia and Virginia certification requirements differ so significantly, applying the result of Pledger to the Virginia expert certification requirement would be error.

   c. **Because the WVMPLA and Virginia statutes materially differ, the Virginia statute requires a separate Shady Grove – and Erie – analysis considering whether its specific and different requirements conflict with a federal rule and whether it is procedural or substantive.**

The Supreme Court clarified that the rule of Erie Railroad Co. v. Tompkins does not apply when there is a Federal Rule that directly conflicts with a state law. See Shady Grove, 559 U.S. at 398 (citing Burlington N.R. Co. v. Woods, 480 U.S. 1, 4-5 (1987); Hanna v. Plumer, 380 U.S. 460, 463–64 (1965). To see if a conflict exists, a Court must look at the questions answered by the Federal Rule and the conflicting state law. Shady Grove, 559 U.S. at 398. To displace state law, a Federal Rule, when fairly construed, must be "sufficiently broad to cause a **direct collision** with the state law, or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." Burlington, 480 U.S. 1, 4–5 (1987) (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 749-50, and n.9 (1980); Hanna, 380 U.S. at 471-72) (quotation marks omitted) (emphasis added). Where the Federal Rule and the state law "can exist side by side . . . each controlling its own intended sphere of coverage without conflict" then there is no direct collision. Walker, 446 U.S. at 752.



12



Erie applies where there is no direct conflict between a Federal Rule and the state law in question, and a Federal Court exercising diversity or supplemental jurisdiction must apply state substantive law. See Walker, 446 U.S. at 751-53 (finding Oklahoma statute applied after determining no conflict with a federal rule).

Here, the Federal Rules do not conflict with Virginia's expert certification requirement because the Federal Rules do not answer the question of whether a medical malpractice plaintiff must impliedly certify that he/she has obtained a favorable expert opinion in writing prior to requesting service on the defendants or must provide express certification to the defendant upon a defendant's request. Virginia's expert certification requirements do not change how service of process is affected, are not a prerequisite to filing a complaint, nor do they impose any heightened pleading requirements. The Virginia rule do not directly collide with any Federal Rule.

Because the Virginia statute does not directly collide or conflict with any Federal Rules, an analysis under Erie is appropriate. Pledger is not applicable because it decided the substantive-procedural qualities of a certificate of merit requirement in a *federal claim* subject to the Court's original jurisdiction, not a state law claim based upon supplemental jurisdiction.

In this case, the Court *may* exercise supplemental jurisdiction over Plaintiff's state law medical malpractice claims. The cause of action is derived purely from state law. The jurisdiction exercised in Pledger, however, derived from the Federal Tort Claims Act thereby implicating that Court's original jurisdiction to hear federal claims. Pledger, 5 F.4th at 515. Both Erie and Shady Grove specifically considered what law to apply when sitting in diversity jurisdiction under 28 U.S.C. § 1332. Pledger, 5 F.4th, at 533 (Quattlebaum, J.,

13

182.0098\MEK
4871-2136-0927 .v2

dissenting). By contrast, Pledger had jurisdiction under 28 U.S.C. § 1346(b)(1) based upon a federal claim. Id. This difference is significant. Plaintiffs in a FTCA case can only file in federal court so there is no risk of forum shopping, differing results in state court versus federal court, or other inequities. The Erie factors identified by the Supreme Court seem meaningless in the face of an FTCA suit as was brought in Pledger. Id.

However, these factors are clearly not meaningless in a diversity or supplemental jurisdiction case. Mr. Corbin has a choice of forum for his state medical negligence claims and this court declining to adopt Virginia substantive laws could issue an alternate outcome than if the case had been brought in state court.

In a Virginia state court, the pre-service (but post-filing of the Complaint) expert certification requirement would apply and the failure to comply with it can lead to dismissal. As Virginia Code § 8.01-20.1 is substantive, in that it provides rights and assurances to defendants, and the failure to comply with its provisions is grounds for dismissal, this Court should apply the law of the Commonwealth of Virginia and dismiss the medical malpractice claim against Sonya Movassaghi, DMD, for failure to certify an expert opinion before service.[3]



---

[3] Defendant is aware of the Andes v. United States decision, 2020 U.S. Dist. LEXIS 121659 where Judge Jones held that the expert certification requirement did not apply under the facts of that FTCA case. However, Defendant believes this decision incorrectly reasoned that the Virginia Code imposed additional requirements to Rule 11. Rule 11(b) requires the "claims, defenses, and other legal contentions are *warranted by existing law* . . . ." The existing law here is the expert certification requirement set forth in Virginia Code § 8.01-20.1. When these areas of law are read together, Rule 11 requires existing law, the pre-service expert opinion required by Virginia Code § 8.01-20.1, to be met or the case can be dismissed.

### III. Dr. Movassaghi is entitled to immunity under the COVID-19 immunity provisions issued by Governor Northam.

Plaintiff's failure to obtain an expert certification notwithstanding, Dr. Movassaghi, is statutorily immune and may not be held liable for any of the alleged acts, alleged omissions, or alleged consequences thereof set forth in Plaintiff's Complaint, including but not limited to, all claims for personal injury or other damages. See Va. Code §§ 8.01-225.01 and 8.01-225.02.

Virginia Code § 8.01-225.01(A) states that:

In the absence of gross negligence or willful misconduct, any health care provider who responds to a disaster by delivering health care to persons injured in such disaster shall be immune from civil liability for any injury or wrongful death arising from abandonment by such health care provider of any person to whom such health care provider owes a duty to provide health care when (i) a state or local emergency has been or is subsequently declared; and (ii) the provider was unable to provide the requisite health care to the person to whom he owed such duty of care as a result of the provider's voluntary or mandatory response to the relevant disaster.

Virginia Code § 8.01-225.02(A) states that:

In the absence of gross negligence or willful misconduct, any health care provider who responds to a disaster shall not be liable for any injury or wrongful death of any person arising from the delivery or withholding of health care when (i) a state or local emergency has been or is subsequently declared in response to such disaster, and (ii) the emergency and subsequent conditions caused a lack of resources, attributable to the disaster, rendering the health care provider unable to provide the level or manner of care that otherwise would have been required in the absence of the emergency and which resulted in the injury or wrongful death at issue.

At all times and places pertinent to Plaintiff's Complaint, Dr. Movassaghi was responding to a disaster by delivering health care to persons injured in such disaster. Virginia Governor Ralph S. Northam's April 28, 2020, Executive Order Number Sixty (2020) – Clarification of Certainty Immunity from Liability for Healthcare Providers in Response to Novel Coronavirus (COVID-19) states as follows:



15

182.0098\MEK
4871-2136-0927 .v2

"Responds to a disaster" includes but is not limited to, pursuant to Order of Public Health Emergency Two as amended, *temporary withholding of the provision of procedures, consultations or surgeries performed in* an inpatient or outpatient surgical hospital licensed under 12 Va. Admin. Code §5-410, free-standing emergency department or endoscopy center, physicians' office, or *dental, orthodontic, oral surgeon, or endodontic offices that require PPE, the delay of which was not anticipated to cause harm to the patient by negatively affecting the patient's health outcomes, or leading to disability or death.* (emphasis added.)

At all times and places pertinent to the Complaint, Dr. Movassaghi was a healthcare provider as defined in Virginia Code § 8.01-581.1. At all times and places pertinent to the Complaint, and through the present, the COVID-19 pandemic disaster qualified as a disaster under Virginia Code §§ 8.01-225.01, 8.01-225.02, 44-146.16, and 44-146.17, as well as Virginia Executive Orders addressing the same.

Dr. Movassaghi is entitled to immunity from civil liability for the injuries alleged in the Complaint because a state or local emergency had been declared at the time, and Dr. Movassaghi's ability to provide health care to Plaintiff was affected because of a response to the COVID-19 pandemic disaster in accordance with Governor Northam's Executive Orders and professional health guidelines. See Va. Code § 8.01-225.01(A), (C) and (D).

Further on this point, Governor Northam's April 28, 2020, <u>Executive Order Number Sixty (2020) – Clarification of Certainty Immunity from Liability for Healthcare Providers in Response to Novel Coronavirus (COVID-19)</u> states as follows:

> Response to the COVID-19 disaster will require both public and private healthcare providers … to deliver care using personnel, supplies, and equipment in ways that would not be undertaken in conventional practices. Examples could include … withholding healthcare services in certain situations. It is in the public interest to afford healthcare providers involved in the delivery of healthcare impacted by COVID-19 with adequate protection against liability for good faith actions or omissions taken in their efforts to combat this health emergency.



There is no plausible allegation of gross negligence or willful misconduct that would prevent immunity from applying here. Plaintiff's naked allegations of improper conduct are undercut by the facts alleged in the Complaint. Dr. Movassaghi provided care to him starting with the extraction procedure and then following the procedure. She worked to help him during a time of great risk to healthcare providers and their patients – the COVID-19 pandemic. Plaintiff can disagree with the care he received, but the allegations of the Complaint do not support willful or wanton misconduct or gross negligence. In short, pursuant to the Virginia Code sections and Executive Orders outlined above, Dr. Movassaghi has immunity from all the alleged damages contained in Plaintiff's Complaint.

**IV. There is no plausible allegation to support plaintiff's gross negligence claims so they must be dismissed.**

Under Virginia law, "gross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of another. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." <u>Griffin v. Shively</u>, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984) (internal quotations omitted). Plaintiffs face a steep hurdle when claiming a defendant's actions amounted to gross negligence. <u>See</u> <u>Doe v. Russell Cnty. Sch. Bd.</u>, 292 F. Supp. 3d 690, 716 (W.D. Va. 2018) ("[T]he standard for gross negligence is very high.").



"[G]ross negligence is the 'absence of slight diligence, or the want of even scant care.'" <u>Colby v. Boyden</u>, 241 Va. 125, 132, 400 S.E.2d 184, 188 (1991) (quoting <u>Frazier v. City of Norfolk</u>, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)). It does not arise from "lack of attention and diligence, or mere inadvertence . . . ." <u>Finney v. Finney</u>, 203 Va. 530, 531, 125 S.E.2d 191 (1962). While gross negligence is "something less than . . . willful, wanton, and

17

reckless conduct," the defendant's acts must clearly amount to a "heedless and palpable violation of legal duty respecting the rights of others . . . ." Elliott v. Carter, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (quoting Chapman v. City of Virginia Beach, 252 Va. 186, 190, 475 S.E.2d 798, 800-01 (1996)). If the defendant exercised some degree of diligence or care, however, a gross negligence claim must fail as a matter of law. Elliott, 292 Va. at 622-23, 791 S.E.2d at 732-33.

As outlined above, the Complaint's factual allegations demonstrate that Dr. Movassaghi provided care to Plaintiff. While he disagrees with that care, there is no plausible support for a gross negligence claim arising from what is, at most, a tooth extraction by a dentist that simply could not remove the tooth. The Plaintiff received post-operative care that was appropriate since the COVID-19 pandemic limited his treatment options. And Plaintiff admits that he received "some care." See Sams v. Armor Corr. Health Servs., No. 3:19cv639, 2020 U.S. Dist. LEXIS 181799, *90–93 (E.D. Va. Sept. 30, 2020); Murray v. Correct Care Solutions, LLC, No. 3:16cv279, 2017 U.S. Dist. LEXIS 7244, at *6–7 (E.D. Va. Jan. 18, 2017).[4] The gross negligence claims fail as a matter of law and must be dismissed.

## CONCLUSION

For the foregoing reasons as well as those presented during oral argument, Defendant, Sonya Movassaghi, DMD, respectfully requests that this Court enter an Order granting her Rule 12(b)(6) Motion to Dismiss as to all pending claims and all requests for

---

[4] Additionally, if Dr. Movassaghi was not deliberately indifferent, then she was not grossly negligent as a matter of law. See Hixson v. Hutcheson, Nos. 5:17cv32; 5:18cv1, 2019 U.S. Dist. LEXIS 11326, at * 19 (W.D. Va. Jan. 23, 2019), aff'd sub nom, Hixson v. Moran, 1 F.4th 297 (4th Cir. June 17, 2021).

18

182.0098\MEK
4871-2136-0927 .v2

relief, DISMISSING her from this action WITH PREJUDICE, and granting such further relief as this Court deems just and appropriate.

                                            Respectfully submitted,

                                            By: _____/s/_____
                                                      Of Counsel

Matthew E. Kelley, Esq. (VSB No. 68303)
Nathan H. Schnetzler (VSB No. 86437)
FRITH ANDERSON + PEAKE
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone:     (540) 772-4600
Fax:       (540) 772-9167
Email:     mkelley@faplawfirm.com
             nschnetzler@faplawfirm.com
*Counsel for Sonya Movassaghi, DMD*


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

182.0098\MEK
4871-2136-0927 .v2

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2022, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                /s/ Matthew E. Kelley
                                                         Of Counsel

