CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/19/2022

JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| JEREMY CORBIN,<br><br>*Plaintiff*,<br><br>v.<br><br>SONYA MOVASSAGHI, DMD, *et al*.,<br>*Defendants.* | CASE NO. 6:22-cv-00012<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

Plaintiff Jeremy Corbin alleges that Defendants Sonya Movassaghi, DMD, Karen Woodson, RNC, Goutom Bhowmick, DDS, Tamika Mitchell, RN, and Thomas, RN,[1] violated his Eighth and Fourteenth Amendment rights by showing deliberate indifference to his serious medical needs. Plaintiff brings claims for deliberate indifference under 42 U.S.C. § 1983, as well as state law claims for medical malpractice and gross negligence. Before the Court are Defendants' motions to dismiss, in which Defendants argue that the Amended Complaint (1) fails to state a claim of deliberate indifference against each Defendant; and (2) clearly reveals the existence of meritorious affirmative defenses for state actor Defendants. Plaintiff's suit will be dismissed against all actors in their official capacity, due to sovereign immunity. Plaintiff's suit will also be dismissed as to Defendants Woodson and Mitchell for failure to state a claim. The case will proceed against Defendants Movassaghi and Bhowmick.

---

[1] Defendant Thomas has been dismissed without prejudice from this suit due to Plaintiff's failure to serve. Dkt. 36.

## I.      Background

The following facts are alleged in Plaintiff's complaint and assumed true for purposes of

resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining

standard of review). Plaintiff Corbin, while an inmate at Dillwyn Correction Center ("Dillwyn")

in early 2020, experienced dental pain and, from January through March 2020, filed "at least

three" grievances. Dkt. 28 ("Am. Compl.") ¶¶ 12, 15. "On at least one" grievance form, Plaintiff

indicated that he had a metal fixation plate in his jaw at the pain site. *Id.* ¶ 15. This plate had

been surgically placed when Plaintiff suffered a broken jaw prior to his incarceration at Dillwyn.

*Id.* ¶ 12.

On March 20, 2020, the Warden of Dillwyn issued a memorandum stating that the Virginia

Department of Corrections' ("VADOC") Chief Dentist recommended the agency comply with

the American Dental Association's COVID-19-related recommendations; thus, the Dillwyn

dental department would postpone for "at least three weeks" all elective procedures, though

services would still be provided for dental emergencies. *Id.* ¶ 14. The memorandum defined

dental emergencies as "conditions that may have an immediate effect on the health of the

offender." *Id.* (citing Mem. From the Desk of Dana Ratliffe-Walker, Warden to Offender

Population (Mar. 20, 2020)).

On March 24, 2020, Defendant Dr. Movassaghi, a staff dentist at Dillwyn, saw Plaintiff for a

severe toothache in tooth #18. *Id.* ¶ 16. Plaintiff made Dr. Movassaghi aware that tooth #18 was

screwed into a mandible fixation plate in his jaw, and Dr. Movassaghi confirmed this via X-ray.

*Id.* ¶¶ 17, 19. Dr. Movassaghi, "who was not qualified as an oral surgeon and did not work in a

– 2 –

surgical facility" tried unsuccessfully to remove the tooth, "causing Mr. Corbin great pain and anguish" and "exacerbat[ing]" his existing pain. *Id.* ¶¶ 20–21. Further, Plaintiff alleges she "proceeded with the attempted extraction, despite knowing that such a course of treatment was likely to cause Mr. Corbin harm." *Id.* ¶ 20. After stopping this unsuccessful procedure, Dr. Movassaghi told Plaintiff he would need to be seen by an oral surgeon. *Id.* ¶ 22.

Dr. Movassaghi treated Plaintiff four additional times from March 24, 2020, until April 16, 2020. *Id.* ¶ 24. At his last treatment session with Plaintiff, Dr. Movassaghi prescribed Plaintiff antiseptic mouthwash. *Id.* ¶ 49. Dr. Movassaghi left Dillwyn on April 16, 2020. *Id.* ¶ 24. That day, Defendant Dr. Bhowmick took over as Plaintiff's Dillwyn dentist, treating Plaintiff at least six times between April 16, 2020 and June 9, 2020. *Id.* ¶¶ 29–30. Plaintiff complained of pain at five of those visits, as well as bleeding when eating and an inability to use the left side of his mouth to eat. *Id.* ¶ 30.

The VADOC's guidelines prohibiting non-emergency dental care ended on April 30, 2020, and four days later, on May 4, 2020, Dr. Bhowmick secured approval for Plaintiff to undergo oral surgery. *Id.* ¶¶ 32, 34. Plaintiff alleges that, prior to this surgery, on at least four occasions, he filed emergency grievances stating that he did not receive his prescribed mouthwash. *Id.* ¶ 49. Further, Defendant Nurse Mitchell forgot to bring his mouthwash and pain medication on June 10, 2020 and refused to bring either to him. *Id.* ¶ 51.

Plaintiff met with Dr. Brown, an oral surgeon, on June 9, 2020, i.e., 39 days after the VADOC's policy prohibiting non-emergency dental surgery amidst the COVID-19 pandemic ended, and 75 days since Plaintiff submitted his first grievance concerning dental pain. *Id.* ¶ 38. He still had not had dental surgery. After this appointment, Plaintiff submitted additional

emergency grievances ("at least five") before his dental surgery finally occurred "on or about" June 25, 2020. *Id.* ¶¶ 38–39.

After Plaintiff's surgery, Dr. Bhowmick wrote prescriptions for several medicines, including the acetaminophen-hydrocodone that the Hospital ordered, but Dr. Bhowmick wrote the prescription for twice a day, while the Hospital prescribed the pain reliever for three times daily. *Id.* ¶¶ 41–42. On June 27, 2020, Plaintiff filed an emergency grievance complaining of (1) pain and (2) Dillwyn improperly changing his pain medication prescription frequency, to which Defendant Nurse Thomas responded that the grievance did not qualify as an emergency. *Id.* ¶ 43. Defendant Nurse Woodson wrote a response to the Informal Complaint, indicating that on that date his medications were "KOP" ("keep on person"). *Id.*

Plaintiff alleges Defendants Bhowmick, Movassaghi, and Woodson had clear knowledge of Plaintiff's pain and suffering but took no steps to expedite a surgery consultation appointment. *Id.* ¶ 36. Plaintiff further alleges Defendants Movassaghi, Woodson, Mitchell, and Bhowmick were deliberately indifferent to Plaintiff's medical needs, leaving him disabled until a qualified surgeon was permitted to intervene on June 25, 2020, in addition to providing him "sever[e]ly lacking" post-surgical treatment. *Id.* ¶ 52.

## II.    Legal Standard

First, when a party attacks the subject matter jurisdiction of the Court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)). Where, as here, a defendant challenges the sufficiency of a plaintiff's allegations to establish subject matter jurisdiction, the

court must accept the truth of the plaintiff's allegations at this stage, but still, it is the plaintiff's burden to establish that the allegations are sufficient to support subject matter jurisdiction. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Second, to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id*. at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Further, "[a]lthough a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," including qualified immunity. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted)).

## III.     Analysis

### A.  Plaintiff's Claims Against Defendants Bhowmick, Woodson, and Movassaghi in Their Official Capacities Must Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

The Eleventh Amendment bars claims for money damages against a Virginia official sued in his official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Within this district, Dillwyn has previously been recognized as an arm of the state for Eleventh Amendment purposes. *Mueller v. Jabe*, No. 7:10-cv-239, 2011 WL 1044053, at *7 (W.D. Va. Mar. 18, 2011).

Plaintiff filed suit against Defendants Bhowmick, Woodson, and Movassaghi in their individual and official capacities. Am. Compl. ¶¶ 7–9. Because Plaintiff's claim for damages against state employees sued in their official capacities implicates the Eleventh Amendment, and sovereign immunity is a jurisdictional issue, the Court will grant Defendants' motions to dismiss Plaintiff's claims against them in their official capacities, pursuant to Rule 12(b)(1). *See, e.g.*, *Jones v. Va. Commonwealth Univ.*, No. 3:20-cv-792, 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021); *Rector & Visitors of Univ. of Va. v. Carter*, 591 S.E.2d 76, 78 (Va. 2004).

### B.  Defendants Woodson and Mitchell's Motions to Dismiss Are Granted Under Rule 12(b)(6) Due to Plaintiffs' Failure to State a Claim

To support a § 1983 claim for failure to provide adequate medical care and, therefore, deliberate indifference, "a prisoner must allege acts or omissions sufficiently harmful to evidence

– 6 –

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The Fourth Circuit treats this standard as the same for Eighth and Fourteenth Amendment

claims. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). As Plaintiff was incarcerated at the

time of the harms alleged in his Amended Complaint, his claim should be regarded as an Eighth

Amendment claim.

To prove a claim for Eighth Amendment deliberate indifference to serious medical needs, an

inmate must establish the following: "(1) objectively, the deprivation suffered or injury inflicted

was 'sufficiently serious,' and (2) subjectively, the prison officials acted with a 'sufficiently

culpable state of mind.'" *Rice v. Anderson Cnty.*, No. 19-cv-851, 2021 WL 2435725, at *9

(D.S.C. June 15, 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Williams v.

Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). To satisfy the pleading standard for a defendant

having subjective knowledge, a plaintiff must put forward factual allegations that—taken as

true—would establish how a defendant would have obtained such knowledge. This Court, in

*Alexander v. Blackman*, held that a plaintiff's conclusory statement that a defendant correctional

officer was "fully aware of [his] tooth pain," was insufficient to satisfy the pleading standard.

*Alexander v. Blackman*, No. 7:19-cv-00076, 2020 WL 758959, at *3 (W.D. Va. Feb. 14, 2020).

The Court specified that the plaintiff "d[id] not allege facts to show how [the defendant] would

have known that [plaintiff] had cavities or was in pain," as, "[f]or example, he nowhere alleges

that he told [the defendant] that he was in pain, that he and [the defendant] ever had a

conversation about his teeth or any pain, or that [the defendant] could have known, merely from

observing [him], that he was experiencing tooth-related pain." *Id.* The Court will apply these

principles to assess the legal sufficiency of Plaintiff's claims as pleaded against each of the

Defendants.

### i.    Defendant Woodson, RNC

Plaintiff alleged that Defendant Woodson was deliberately indifferent to his serious medical needs for three reasons: (1) Defendant Woodson failed to expedite Plaintiff's oral surgery, Am. Compl. ¶ 36; (2) Defendant Woodson failed to provide Plaintiff with "adequate pain and antibiotic treatment," *id.* ¶ 38; and (3) Defendant Woodson failed to ensure that Plaintiff received his prescription antibacterial mouthwash on one occasion, *id.* ¶ 51. Plaintiff's claims against Defendant Woodson fail because the Amended Complaint failed to allege any facts that, taken as true, would show that Defendant Woodson had subjective knowledge of his tooth pain.

Plaintiff's only allegation that Defendant Woodson had knowledge of Plaintiff's pain and suffering is that she, Defendant Bhowmick, and Defendant Movassaghi had "knowledge obtained from his multiple grievances and myriad of treatment appointments." *Id.* ¶ 36. That's it. Thus, like the plaintiff in *Alexander*, 2020 WL 758959, at *3, Plaintiff never alleged any facts that, taken as true, would show that Defendant Woodson would have known that he was in pain. Plaintiff does not allege Defendant Woodson ever treated him, spoke with him, or reviewed his medical records. Defendant Woodson's signature appears on only one grievance attached to the Amended Complaint, and it is dated September 21, 2020—more than three months *after* the events underlying the Amended Complaint. Am. Compl. (Ex. 13). And, significantly, none of the other grievances included within the Amended Complaint appear to have been signed by Defendant Woodson. Nor has Plaintiff ever alleged any facts that show or give the Court any plausible reason to believe that Defendant Woodson saw Plaintiff's grievances and actively ignored them. Similarly, although Plaintiff alleged Defendant Woodson "refused [him] adequate pain and antibiotic treatment," Am. Compl. ¶ 38, he never alleged that Defendant Woodson had any power to dispense such treatment.

– 8 –

As Plaintiff fails to sufficiently allege facts necessary to support a reasonable inference that Defendant Woodson had knowledge of Plaintiff's pain and suffering, Defendant Woodson's motion to dismiss will be granted.

### ii.     Defendant Mitchell, RN

Plaintiff alleges that Defendant Mitchell violated Plaintiff's rights in two ways: (1) Defendant Mitchell, in the two weeks before June 25, 2020 and his surgical appointment, "refused Mr. Corbin adequate pain and antibiotic treatment as Mr. Corbin endured an additional two weeks of pain and suffering before his dental surgery," *id.* ¶ 38; and (2) Defendant Mitchell, on one occasion, failed to bring him prescription antibiotic mouthwash and medication and refused to bring them to him, *id.* ¶ 51.

Even with subjective knowledge, a nurse who "rel[ies] upon the medical judgment of a doctor as to the proper course of treatment for an inmate," will not be found to have acted with deliberate indifference "absent extraordinary circumstances." *Ames v. Sidi*, No. 3:16-cv-781, 2019 WL 5685585, at *4 (E.D. Va. Oct. 31, 2019). If a nurse acts outside the medical judgment of a doctor, an "inadvertent failure to provide adequate medical care" does not amount to deliberate indifference. *Estelle*, 429 U.S. at 105–06; *see also Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986).

A Case in this district previously recognized that a defendant nurse did not commit deliberate indifference by negligently giving an inmate the wrong prescription. *Hight v. New River Valley Reg'l Jail Med. Staff Dep't*, No. 7:16-cv-00566, 2017 WL 530571, at *2 (W.D. Va. Feb. 8, 2017). When a case in this district alternatively denied a motion to dismiss against a defendant nurse alleged to have, "on 'numerous' occasions," given [plaintiff] less of his medication than was prescribed or an alternative medication and to have "let his prescription run out, leaving him

without pain medication for 24 hours on at least one occasion," the Court did so by reasoning that "[i]f [Plaintiff] could prove that one or both nurses was knowingly not giving him the correct dosage of his prescribed pain medication or knowingly delayed ordering a refill of his prescription, he would state a claim of deliberate indifference to his serious medical need for pain relief." *Sprinkle v. Barksdale*, No. 7:08-cv-00430, 2009 WL 1956370, at *4 (W.D. Va. July 6, 2009). Thus, a knowing significant error or delay is necessary for a nurse to be found deliberately indifferent when administering an inmate's medication.

Various courts have found that a single denial of medication fails to constitute a sufficiently serious deprivation of rights under the Eighth Amendment. *E.g.*, *Watson v. Doe*, 1:19-cv-1043, 2020 WL 1644346, at *2 (M.D.N.C. Mar. 5, 2020) ("Plaintiff's only allegation against Defendant [] is that on one occasion he failed to send adequate medication with Plaintiff . . . This allegation of a single instance of failure to send medication is insufficient to state a claim of deliberate indifference."); *Bryant v. Eagleton*, No. 2:13-cv-1045, 2014 WL 1278180, at *9 (D.S.C. Mar. 27, 2014) ("Even assuming that Plaintiff did not receive medical supplies for seven days, the undersigned recommends granting summary judgment to Defendant []. This case is not about repeated failures of Defendant [] to provide Plaintiff's medical supplies to him; Plaintiff, who generally received supplies on Fridays, complains about not receiving his supplies on one Friday. Plaintiff did receive his medical supplies the following Friday. Although it is unfortunate that Plaintiff went seven days without receiving medical supplies, the undersigned cannot conclude that Defendant [] acted with deliberate indifference towards Plaintiff's serious medical needs."); *Ayala v. Terhune*, 195 F. App'x 87, 91 (3d Cir. 2006) ("As for the failure to provide a new colostomy bag every day, even assuming it is medically necessary for colostomy bags to be changed daily, the record reveals no pattern of deprivation that rises to the level of deliberate

indifference. . . . Although the defendants may have failed to provide a new colostomy bag to [the plaintiff] on occasion, at best, their failure amounts to negligence, not deliberate indifference."); *Boyce v. DeRose*, No. 1:cv-10-0460, 2011 WL 1304728, at *3 (M.D. Pa. Mar. 31, 2011) ("At most, [Plaintiff] alleges the denial of a single dose of medication on one occasion.").

Even with subjective knowledge of Plaintiff's pain, Defendant Mitchell, as a nurse relying upon a doctor's medical judgment for treatment of Plaintiff, will not be found to have acted with deliberate indifference "absent extraordinary circumstances." *Ames*, 2019 WL 5685585, at *4. Plaintiff alleges no facts supporting such extraordinary circumstances. Thus, Plaintiff's argument that Defendant Mitchell is personally liable for refusing him adequate pain and antibiotic treatment in the two weeks before June 25, 2020 cannot be sustained.

Plaintiff has also alleged that Defendant Mitchell "refused to bring him his antibiotic mouthwash or his pain relief medication," after having "forgot[ten]" them, saying "she wasn't going to bring them back." Am. Compl. ¶ 51. The Court must determine whether Defendant Mitchell's single denial of medication rose to a sufficiently serious deprivation of rights to constitute an Eighth Amendment violation.

Cases in this district have previously found that negligent management of an inmate's prescriptions does not suffice for a deliberate indifference claim. *Hight*, 2017 WL 530571, at *2. Indeed, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). And here, the allegations in the Amended Complaint establish that the medication and mouthwash was "forgot[ten]"—which is indicative of negligence. Defendant Mitchell's later following statement that "she wasn't going to bring them back," without more, is not sufficient to transform that single inadvertent instance

– 11 –

into actionable deliberate indifference to serious medical needs. Substantial precedent from this Circuit and others outlined above supports Defendants' argument that a single instance of a delayed or denied medication does not constitute a sufficient deprivation of rights to constitute an Eighth Amendment claim. *Watson*, 2020 WL 1644346, at *2; *Bryant*, 2014 WL 1278180, at *9; *Ayala*, 195 F. App'x at 91; *Boyce*, 2011 WL 1304728, at *3.

Thus, the motion to dismiss as to Defendant Mitchell will be granted.

### C. Defendants Movassaghi and Bhowmick's Motions to Dismiss Are Denied

### i.    Defendant Movassaghi, DDS

When Dr. Movassaghi, Dillwyn staff dentist, first saw Plaintiff for a severe toothache on March 24, 2020, Defendant Movassaghi took and interpreted an X-ray, made a diagnosis, and attempted an extraction of the tooth in pain. *Id.* ¶¶ 16–17, 19. When the extraction was unsuccessful, Defendant told Plaintiff he would need to be seen by an oral surgeon. *Id.* ¶ 22. Plaintiff alleges the unsuccessful extraction "caus[ed] Mr. Corbin great pain and anguish," "exacerbat[ing]" his existing pain, *id.* ¶¶ 20–21. Further, Plaintiff alleges that, by determining that Plaintiff's health situation did not qualify as an emergency, Defendant Movassaghi delayed his treatment, "unnecessarily prolong[ing] Mr. Corbin's pain, about which he made frequent complaints." *Id.* ¶ 33.

A claim of delay in administering prescribed medical treatment can state an Eighth Amendment claim. *Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009). Delayed treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Formica v. Aylor*, No. 7:14-cv-00449, 2015 WL 4648009, at *3 (W.D. Va. Aug. 5, 2015) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)

(vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment)). The delay must "resul[t] in some substantial harm to the patient," such as by "frequent complaints of severe pain." *Alexander*, 2020 WL 758959, at *3 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)). However, delays need not be extensive to satisfy the deliberate indifference standard. Courts have found that dental treatment delays of as little as three weeks evidence deliberate indifference. *See Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (finding a three-week delay in completing paperwork for an inmate to have dental surgery was a genuine issue of material fact in establishing deliberate indifference); *see also Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994). Accordingly, although the Fourth Circuit has previously held that "[q]uestions of medical judgment are not subject to judicial review," *Russell v. Sheffer*, 528 F.3d 318, 319 (4th Cir. 1975), a medical judgment delaying treatment in a manner causing substantial harm can constitute an Eighth Amendment claim.

A government official who violates a defendant's Eighth Amendment rights may still escape liability based on qualified immunity. Qualified immunity protects government officials from civil liability for "civil damages insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Yet, although the COVID-19-related moratorium on non-emergency dental surgeries discussed in Plaintiff's Amended Complaint was unprecedented, the guidance did not change the VADOC's definition of "dental emergency." Am. Compl. (Ex. 1). In fact, the guidance specifically incorporated the existing definition outlined in Operating Procedure 720.6 *Dental Services*. *Id.* Thus, based on the facts alleged in the Amended Complaint, a reasonable person would have known a delay in treatment, resulting in frequent complaints of severe pain, could

– 13 –

constitute a violation of Defendant's constitutional rights. *Alexander*, 2020 WL 758959, at *3. And at this stage, arguments against Defendants Movassaghi and Bhowmick should not be dismissed based on qualified immunity. *Harlow*, 457 U.S. at 818.

At the pleading stage, all that is required for the subjective prong of an Eighth Amendment claim is for Plaintiff to allege facts that, taken as true, would demonstrate Defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer*, 511 U.S. at 837. Plaintiff alleges that on March 24 Defendant Movassaghi unsuccessfully attempted to extract Plaintiff's tooth, ultimately stopping the procedure and informing Plaintiff he would need to be seen by an oral surgeon. Am. Compl. ¶¶ 20–22. Plaintiff further alleges Defendant Movassaghi replied to a March 27, 2020 emergency grievance complaining of "serious pain due to the metal plates in [his] jaw and the dentist not getting the rest of [his] tooth out," as well as "an earache," his "jaw hurt[ing]," and "m[i]grain[e]s." *Id.* ¶ 27. And Plaintiff alleges Defendant Movassaghi replied to the grievance: "[p]er order of the Governor, dental procedures which do not negatively affect the patient's health outcomes or lead to disability or death are prohibited. Please use prescriptions provided and techniques discussed to manage pain." *Id.* (internal reference omitted). Thus, Plaintiff has alleged substantial facts that (1) Defendant Movassaghi had subjective knowledge of Plaintiff's pain, and (2) Defendant's delay in treatment unnecessarily prolonged inmate Plaintiff's pain, meeting the Eighth Amendment deliberate indifference standard. *See Farmer*, 511 U.S. 825 at 837; *Smith*, 589 F.3d at 738–39; *Formica*, 2015 WL 4648009 at *3. Thus, the Court will deny Defendant Movassaghi's motion to dismiss Count I of the Amended Complaint.

**ii.    Defendant Bhowmick, DDS**

Plaintiff alleges Defendant Bhowmick (1) failed to classify Plaintiff as an exception to the statewide policy prohibiting dental surgeries due to the COVID-19 pandemic, Am. Compl. ¶ 33, (2) failed to expedite Plaintiff's oral surgery after the moratorium on non-emergency surgeries ended, *id.* ¶ 36; (3) failed to provide adequate "pain and antibiotic treatment," *id.* ¶ 38, and (4) provided Plaintiff less pain medication than the Hospital recommended, *id.* ¶¶ 42–44.

Again, at the pleading stage, all that is required for the subjective prong of an Eighth Amendment claim is for Plaintiff to demonstrate that Defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer*, 511 U.S. 825 at 837. Plaintiff has alleged that Dr. Bhowmick treated Plaintiff at least six times between April 16, 2020 and June 9, 2020. Am. Compl. ¶¶ 29–30. Plaintiff alleges that, at five of those visits, he complained of pain, bleeding when eating, and an inability to use the left side of his mouth to eat. *Id.* ¶ 30. Further, Plaintiff alleges that Dr. Bhowmick responded to several of his emergency grievances. *Id.* ¶¶ 31–32. Thus, Plaintiff has alleged substantial facts that (1) Defendant Bhowmick had subjective knowledge of Plaintiff's pain, and (2) Defendant's delay in treatment unnecessarily prolonged an inmate's pain, meeting the Eighth Amendment deliberate indifference standard, even if the delay lasted only 39 days under Defendant Bhowmick's care. *See Farmer*, 511 U.S. 825 at 837; *Smith*, 589 F.3d at 738–39; *Formica*, 2015 WL 4648009 at *3; *Boyd*, 47 F.3d at 969; *Patterson*, 19 F.3d at 440. Accordingly, the Court will also deny the motion to dismiss Plaintiff's claims against Defendant Bhowmick.

## IV. Conclusion

Because Plaintiff's claim for damages against state employees sued in their official capacities implicates the Eleventh Amendment, the Court will grant Defendants' motions to

– 15 –

dismiss Plaintiff's official-capacity claims against them, pursuant to Rule 12(b)(1), in an accompanying Order.

Plaintiff has offered facts giving rise to a plausible inference of deliberate indifference against Defendants Movassaghi and Bhowmick, though he has failed to do so against Defendants Mitchell and Woodson. Thus, as his assertions against Defendants Mitchell and Woodson do not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" the motions to dismiss as to these Defendants will be granted in an accompanying Order, while the motions to dismiss as to Defendants Movassaghi and Bhowmick will be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

* * * *

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this   19th   day of August, 2022.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE